1

2

3

4

5

6                    **UNITED STATES DISTRICT COURT**
                          **DISTRICT OF NEVADA**
7
PHILLIP J. LYONS,                      )        3:07-CV-460-LRH (RAM)
8                                      )
               Plaintiff,              )        **REPORT AND RECOMMENDATION**
9                                      )        **OF U.S. MAGISTRATE JUDGE**
               vs.                     )
10                                     )
CONNIE BISBEE, et al.,                 )
11                                     )
               Defendants.             )
12        _____)

13        This Report and Recommendation is made to the Honorable Judge Larry R. Hicks,

14  United States District Judge.  The action was referred to the undersigned Magistrate Judge

15  pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR IB 1-4.  Before the

16  court is Plaintiff's Motion for a Temporary Restraining Order(Doc. #71).  Defendants have

17  opposed (Doc. #94), and Plaintiff has replied (Doc. #101).

18                              **I. BACKGROUND**

19        Plaintiff is in custody of the Nevada Department of Corrections (NDOC) as an inmate

20  at Nevada State Prison (NSP) and Lovelock Correctional Center (LCC).   Plaintiff has filed a

21  motion for a temporary restraining order preventing Defendants from conducting strip

22  searches in open areas of the prison. (Doc. #71 at 1.)  In Count IX of his complaint, Plaintiff

23  alleges that during a 2006 transfer from LCC to NSP, he was strip searched in an outdoor area

24  of the prison tier in a degrading manner without justifiable purpose.  Plaintiff further alleges

25  that he and other inmates were forced to strip naked, bend over, and spread their buttocks in

26  full view of other inmates and staff, including female staff members.  (Doc. #6 at 44-45.)

27  / / /

28                                       1

1    In his motion for a temporary restraining order, Plaintiff alleges that this conduct

2  recurred on November 12, 2008 when he was transferred back from NSP to LCC. (Doc. #71 at

3  3.) Plaintiff alleges that the strip search was conducted outdoors on the prison tier in winter

4  weather.  Plaintiff further alleges that he was forced to remain without a coat or jacket for up

5  to an hour while awaiting classification and that this exposure resulted in a cold.  (*Id.*)  Based

6  on these facts, Plaintiff argues a violation of the Eighth Amendment's prohibition on cruel and

7  unusual punishment.

8    Defendants oppose the motion, arguing that Plaintiff has failed to demonstrate a strong

9  likelihood of success on the merits of the underlying claim or a possibility of irreparable harm.

10  (Doc. #94 at 5, 11.) Defendants also allege that one of the named defendants cannot be located.

11  Finally, Defendants contend that the requested relief is not narrowly tailored to address the

12  harm alleged.  (*Id.* at 11.)

13                                **II. LEGAL STANDARD**

14    The Ninth Circuit uses two alternative tests to determine whether a temporary

15  restraining order should issue. According to the "traditional test," the equitable criteria for

16  granting preliminary injunctive relief are: (1) a strong likelihood of success on the merits; (2)

17  the possibility of irreparable injury to the plaintiffs if injunctive relief is not granted; (3) a

18  balance of hardships favoring the plaintiffs; and (4) advancement of the public interest. *Textile*

19  *Unlimited, Inc. v. A. BMH & Co., Inc.*, 240 F.3d 781, 786 (9th Cir.2001) (citing *Los Angeles*

20  *Mem'l Coliseum Comm 'n v. Nat'l Football League*, 634 F.2d 1197, 1200 (9th Cir.1980)).  In

21  the alternative, the Ninth Circuit uses a "sliding scale" or balancing test where injunctive relief

22  is available to a party demonstrating either: (1) a combination of probable success on the merits

23  and the possibility of irreparable harm; or (2) that serious questions are raised and the balance

24  of hardships tips in its favor.  *A & M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th

25  Cir.2001) (citing *Prudential Real Estate Affiliates, Inc. v. PPR Realty, Inc.*, 204 F.3d 867, 874

26  (9th Cir.2000)).

27  / / /

28                                        2

1    Under the Prison Litigation Reform Act (PLRA), additional requirements must be

2  satisfied before granting injunctive relief against prison officials:

3      Preliminary injunctive relief must be narrowly drawn, extend no further than
       necessary to correct the harm the court finds requires preliminary relief, and be
4      the least intrusive means necessary to correct that harm.  The court shall give
       substantial weight to any adverse impact on public safety or the operation of a
5      criminal justice system caused by the preliminary relief and shall respect the
       principles of comity set out in paragraph (1)(B) in tailoring any preliminary
6      relief.

7  18 U.S.C. § 3626(a)(2). "Section 3626(a) … operates simultaneously to restrict the equity

8  jurisdiction of federal courts and to protect the bargaining power of prison administrators-no

9  longer may courts grant or approve relief that binds prison administrators to do more than the

10  constitutional minimum." *Gilmore v. People of the State of Cal.*, 220 F.3d 987, 999 (9th Cir.

11  2000).

12                                  **III. DISCUSSION**

13      Plaintiff is seeking an injunction to prevent Defendants from conducting strip searches

14  in outdoor areas of the prison.  The Supreme Court has stated that only the "'the unnecessary

15  and wanton infliction of pain' … constitutes cruel and unusual punishment forbidden by the

16  Eighth Amendment."  *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (quoting *Ingraham v.

17  Wright*, 430 U.S. 651, 670 (1977)) (citation omitted).   The Eighth Amendment standard

18  consists of both objective and subjective components.  First, Plaintiff must show that prison

19  officials acted with subjective deliberate indifference. *Farmer v. Brennan*, 511 U.S. 825, 834

20  (1994). Second, the deprivation must be "sufficiently serious." *Id; Hudson v. McMillian*, 503

21  U.S. 1, 8 (1992) (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)).

22      Defendants allege that the searches occurred during a prison "depopulation" when large

23  number of inmates were being moved into and out of LCC for reasons.  (Doc. #94 at 5.)

24  Defendants further allege that during such a process, the administrative regulations require

25  an unclothed body search to be conducted for "weapons, contraband and physical

26  abnormalities."  (*Id.* [citing NDOC Administrative Regulation 430]).  The Ninth Circuit has

27  upheld the constitutionality of cross-gender unclothed body searches where no contact is made.

28                                          3

1   *Somers v. Thurman*, 109 F.3d 614, 622-32 (9th Cir. 1997) (citing *Johnson v. Phelan*, 69 F.3d

2   144, 151 (7th Cir.1995), *cert. denied*, 519 U.S. 1006)).   The searches in this case are

3   distinguishable from those in *Somers*, however, to the extent that they were in an open area of

4   the prison tier.

5         Defendants offer four justifications for conducting the open tier searches: First, this best

6   preserves the safety and security interests of the prison when large numbers of inmates are

7   involved, as it provides gun coverage and supervision for officers conducting the searches by

8   other officers stationed in a control unit.   Second, only the tier area provides enough space to

9   conduct the searches for a depopulation, since the transport buses used for this procedure drop

10  off and pick up forty-two inmates at a time.   Third, this space allows searched inmates to be

11  separated from unsearched inmates, thereby preventing the passage of contraband.   Finally,

12  this method of search allows the most efficient use of personnel, since more enclosed areas

13  would require additional officers to escort inmates through the prison.   In addition to

14  increasing the staff and time requirements for the depopulation procedure, this could allow

15  contraband to be passed to searched inmates by other inmates.  (Doc. #94 at 6-10.)

16        In light of these penological justifications, Plaintiff has not established an adequate

17  likelihood that he would prevail on his deliberate indifference claim, even assuming the

18  deprivation alleged was objectively "serious" enough to merit constitutional scrutiny.  *See*

19  *Farmer*, 311 U.S. at 834.  The culpability for official conduct violating the Eighth Amendment

20  requires offending conduct that is "wanton" in nature.  *Wilson v. Seiter*, 501 U.S. 294, 302

21  (1997).  "Wanton" conduct, in turn, is defined by the constraints facing the official.  *Id*. at 303

22  (citing *Whitley v. Albers*, 475 U.S. 312 (1986)).  In response, Defendants have alleged a number

23  of constraints facing prison officials when performing searches during a depopulation,

24  including the allocation of personnel, the need for a large expanse to conduct the searches, and

25  the need to conduct the searches in a safe and efficient manner.  These factors do not suggest

26  that Defendants failed to manifest any concern for basic human decency or for the health and

27  safety of the inmates as Plaintiff alleges.  (Doc. #71 at 3.)

28                                            4

1    Plaintiff argues that these explanations do not address why it was necessary to move

2 inmates in such large numbers that open areas of the prison were needed to conduct the

3 searches. (Doc. #101 at 7). Plaintiff also argues that during the second transfer he complains

4 of, there were only approximately thirty inmates being transferred, yet an open-area search was

5 nevertheless conducted. (*Id*. at 8.) These arguments do not prove that he is likely to succeed

6 on his claim. Defendants have presented a legitimate need to conduct the searches en masse.

7 The affidavit from the Associate Warden of Operations Halstead indicated that during the 2006

8 depopulation, the inmates being transferred out of LCC had to be ready to board the buses that

9 were arriving with inmates from NSP to facilitate an orderly exchange of inmates. (Doc. #94,

10 Ex. A, at ¶ 20.) Additionally, it is reasonable to conclude that the depopulation was necessary

11 given the time, expense, and risk involved. Conducting a depopulation through multiple

12 transfers as Plaintiff proposes would place an even greater burden on prison officials. While

13 it may be possible to quibble with the justifications offered by Defendants for the procedure,

14 the PLRA requires the court to give "substantial weight" to the effect that the proposed

15 injunctive relief would have on public safety and the operation of the prison system. *See* 18

16 U.S.C. § 3626(a)(2). Therefore, Plaintiff does not offer a "strong" possibility that he could

17 prove that Defendants acted with deliberate indifference in conducting strip searches in open

18 areas of the tier. *See Textile Unlimited*, 240 F.3d at 786.

19    In addition, Plaintiff has failed to demonstrate the possibility of irreparable harm. By

20 his own admission, Plaintiff speculates that "[he] ... *may* suffer irreparable injury or harm" if

21 the searches continue, but does not specify what this future harm would consist of. (Doc. #71

22 at 4, ¶ 1.) Plaintiff alleges that he suffered a cold as a result of the strip search that this could

23 have spread to other inmates. No evidence is offered supporting a causal relationship between

24 the November search and Plaintiff's illness. The court notes that exposure to the elements

25 during these searches is relatively brief, as inmates are required to be unclothed as long as it

26 takes to conduct the search. (Doc. #101, Ex. A, at ¶ 11 [Administrative Regulations].)

27 ///

28                                                                5

1    Plaintiff also argues that this setting allows other prisoners to witness the searches and
2  make abusive comments.  Plaintiff has made no showing that these types of comments are
3  likely to leave a permanent effect on him.  This type of emotional injury is not cognizable under
4  the PLRA without a prior showing of physical injury that is more than de minimis.  *Oliver v.*
5  *Keller*, 289 F.3d 623, 627-28 (9th Cir. 2002).  Even assuming Plaintiff's cold resulted from the
6  strip search and that this constitutes more than a de minimis injury, Plaintiff has not
7  demonstrated that conducting group searches in alternate areas of the prison might prevent
8  these comments from being made.  Finally, it is likely that these types of exchanges are a
9  normal incident of prison life.  *Cf. Somers*, 109 F.3d at 622 (exchange of verbal insults between
10  inmates and guards is a "constant, daily ritual") (citing *Morgan v. Ward*, 699 F.Supp. 1025,
11  1055 (N.D.N.Y.1988)).  While the court recognizes the discomfort experienced by Plaintiff
12  during this procedure, he does not show an irreparable harm that requires the immediate grant
13  of a temporary restraining order.

14    Finally, the balance of hardships in this case favors Defendants.  There is no definite
15  irreparable harm that will befall Plaintiff absent an injunction.  Should this court issue the
16  injunction, however, Defendants would have to alter their policy for transporting inmates.
17  Based on their representations, there is no alternative location for conducting the searches that
18  could offer the same efficiency and safety advantages of the tier.  According to Defendants, the
19  activity and shower areas proposed by Plaintiff could not accommodate the same number of
20  prisoners and would demand a larger number of personnel.  These areas would require
21  searched inmates to pass through the prison, where they could potentially receive contraband
22  before boarding the bus. (Doc. #94 at 8.) Moreover, the heightened requirements of the PLRA
23  require the court to give substantial deference to the operational interests of the prison system
24  when considering injunctive relief.  It is likely the Defendants would suffer the greater hardship
25  by having to reformulate their method of searching inmates during transport. Accordingly, the
26  motion should be denied.

27  / / /

28

## IV. RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that the District Judge enter an Order **DENYING** Plaintiff's Motion for a Temporary Restraining Order (Doc. #71).

The parties should be aware of the following:

1.     That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule IB 3-2 of the Local Rules of Practice, specific written objections to this Report and Recommendation within ten (10) days of receipt.  These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2.     That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1), Fed. R. Civ. P., should not be filed until entry of the District Court's judgment.

DATED: February 10, 2009.

_____
UNITED STATES MAGISTRATE JUDGE