**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | | |
|---|---|---|
| PHILLIP J. LYONS,<br><br>Plaintiff,<br><br>vs.<br><br>CONNIE BISBEE, et al.<br><br>Defendants. | ) | 3:07-CV-460-LRH (RAM)<br><br>**REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE** |

This Report and Recommendation is made to the Honorable Larry R. Hicks, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR IB 1-4.

Before the court is Defendants' Partial Motion for Judgment on the Pleadings (Doc. #30). Plaintiff has filed an opposition (Doc. #35) and Defendants have replied (Doc. #44). After a thorough review of the arguments and relevant legal authority, and with good cause appearing, the court recommends that the motion be granted in part and denied in part.

## I. BACKGROUND

At the time of the events underlying his allegations, Plaintiff was in custody of the Nevada Department of Corrections (NDOC) as an inmate at Nevada State Prison (NSP) and Lovelock Correctional Center (LCC). (Doc. #21.) Defendants Bisbee, Goodson, Vieth, and Salling are members of Nevada Board of Parole Commissioners. The remaining defendants are NDOC employees. Defendants Whorton, Angelone, Crawford, Bayer and Skolnik are former and current NDOC Directors, and Defendant Cox is named as the Assistant Director of

Operations. Defendants Baca, Donat, and Palmer are wardens and associate wardens at the institutions where Plaintiff has been housed. Finally, Defendants Keith and Grafton are caseworkers at NSP, Defendant Hyde is a correctional officer holding the rank of sergeant, Defendant Smith is a CRP Specialist, and Defendant Schlottman is a Classification Specialist.

Plaintiff brings various claims related to the deprivation of his civil rights by prison officials under 42 U.S.C. § 1983. Count I of the complaint alleges that Defendants Bayer, Angelone, Crawford, Whorton, and Skolnik are responsible for a policy or custom that permitted Plaintiff to be classified as a sex offender though he was never convicted of this charge. (*Id.* at 27.) Plaintiff alleges that the jury was not able to agree on a verdict at his criminal trial and that it was subsequently dismissed at sentencing. (*Id.* at 4.) He further alleges that he learned of this classification on September 25, 2006 during a caseworker interview. Defendants Grafton, Donat, Baca, and Schlottman are also named for denying Plaintiff's grievances relating to this issue. (*Id.* at 26.[1]) Plaintiff alleges that this conduct violated his due process and equal protection rights.

In Count II, Plaintiff alleges that Defendant Angelone, the former director of the Department of Corrections, violated his Eighth Amendment rights by allowing Plaintiff to be transferred to LCC in 1998 due to the sex offender classification. (*Id.* at 29.)

In Count III, Plaintiff alleges that sometime in March 2007, Defendant Keith prepared and presented the Nevada State Parole Board with a report falsely accusing Plaintiff of a sexual offense, resulting in due process and equal protection violations that led to Plaintiff's parole denial. (*Id.* at 31-32.) Plaintiff alleges that the allegations in this report were a dominant factor in the Parole Board's decision to deny Plaintiff parole for three years. Plaintiff further alleges that this submission to the Board violated his Fourteenth Amendment rights to due process and equal protection. Plaintiff also names Defendants Keith, Baca, Donat, Cox, Schlottman, and Smith for denying Plaintiff's grievances related to this issue.

---

[1] Page references to the Plaintiff's complaint utilize his handwritten numbering; all other references to the pleadings utilize the numbering generated by the electronic case filing system.

In Count IV, Plaintiff alleges that members of the Parole Board, including Defendants Bisbee, Goodson, and Vieth, violated Nevada's open meeting law by discussing the dismissed charge at the April 2007 hearing without having it placed on agenda or providing advance notice to Plaintiff. Plaintiff alleges that he was treated as a sex offender and repeatedly questioned about this dismissed charge, resulting in a denial of his Fourteenth Amendment rights to due process and equal protection. (*Id.* at 33-34.)

In Count V, Plaintiff alleges that the parole board's decision to deny him parole was based on an outdated set of guidelines. Plaintiff also alleges that the decision is a result of retaliatory animus for his dismissed sexual offense charge. (*Id.* at 35-36.) Plaintiff alleges violations of the Eighth Amendment, the Fifth Amendment right against double jeopardy, the Fourteenth Amendment right to due process and equal protection under the law, and his rights under the Ex Post Facto Clause of the U.S. Constitution. (*Id.*)

In Count VI, Plaintiff alleges that the Parole Board unfairly discriminated against him because of his geographic location and race. (*Id.* at 37.) Plaintiff alleges that the Parole Board tends to deny parole in longer intervals for inmates incarcerated in prisons located in the northern part of the state and those of African American descent. (*Id.*) Based on the allegations, Plaintiff alleges a violation of the Equal Protection Clause of the Fourteenth Amendment.

In Count VII, Plaintiff alleges that Defendant Salling, the chairwoman of the Parole Board, permitted a policy, practice, or custom of treating Plaintiff as a sex offender, which resulted in an adverse parole decision. (*Id.* at 39.) Plaintiff also alleges that Defendant Salling should be liable for allowing the Board to apply the outmoded guidelines in reaching its decision and for allowing it to discriminate against Plaintiff based on his geographic location within the state. (*Id.* at 40.)

In Count VIII, Plaintiff alleges that Defendant Whorton and other NDOC officials have maintained a retaliatory campaign against Plaintiff because he successfully settled a prior lawsuit against NDOC. (*Id.* at 42.) Plaintiff alleges that former warden James Schomig

imposed various punitive measures in retaliation for a letter Plaintiff had written. Plaintiff alleges that since then, prison officials have failed to reverse any of these measures to retaliate against Plaintiff for the lawsuit. (*Id.* at 43.) Plaintiff alleges a violation his First Amendment right of access to the courts to seek redress for his grievances.

In Count IX, Plaintiff alleges that he was subjected to a strip search on May 22, 2006 in as open area of the prison while observed by female prison officials. He alleges an Eighth Amendment violation based on this incident. (*Id.* at 44-45.)

In Count X, Plaintiff alleges that his First Amendment rights have been violated by the prison's policy of refusing inmates music tapes and CDs bearing an "explicit lyrics" designation. (*Id.* at 46.)

In Count XI, Plaintiff alleges that prison officials violated his right to equal protection by preventing him from being paid for his job in the prison kitchen, in contrast to other inmates. (*Id.* at 48.)

Finally, in Count XII, Plaintiff alleges that parole board members knowingly used "invalid, ineffective, and illegal" parole standards and guidelines to deny Plaintiff parole. (*Id.* at 48A.)

Plaintiff seeks general, compensatory, and punitive damages in varying amounts ranging between $50,000 and $250,000 against each of the various defendants, as well as attorney fees and other legal costs. He also seeks *inter alia* injunctive relief to cease being considered for parole based on his sex offender, racial, and geographic statuses, as well as a new parole hearing.

Defendants move for judgment based on various defenses, including the statute of limitations, res judicata, preclusion through a prior settlement agreement, and absolute immunity. Defendants further argue that even assuming the truth of Plaintiff's factual allegations, his remaining claims based on the Eighth Amendment and the Due Process, Equal Protection, Ex Post Facto, and Double Jeopardy Clauses of the U.S. Constitution fail to state

cognizable claims for relief.[2]

## II. LEGAL STANDARD

A motion brought under Federal Rule of Civil Procedure 12(c) tests the legal sufficiency of the opposing party's pleadings after the pleadings are closed. The Rule provides a means for disposing cases when the material facts are not in dispute between the parties and a judgment on the merits can be achieved by focusing on the content of the competing pleadings, exhibits, matters incorporated by reference in the pleading, whatever is central or integral to the claim for relief or defense, and any facts taken upon judicial notice. 5C Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice & Procedure Civil* 3d § 1367 (2008).

A motion for judgment on the pleadings bears close resemblance to a Rule 12(b)(6) motion to dismiss. *Qwest Comms. Corp. v. City of Berkeley*, 208 F.R.D. 288, 291 (N.D. Cal. 2002). The Rule 12(c) motion is appropriate when assuming the truth of all material facts alleged by the responding party, the moving party is entitled to judgment as a matter of law. *Hal Roach Studios v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir. 1989). All allegations of fact by the party opposing the motion are taken as true, and all inferences that may be reasonably drawn from the facts should be construed in favor of the plaintiff. *General Conference Corp. of Seventh-Day Adventists v. Seventh Day Adventist Congregation Church*, 887 F.2d 228, 230 (9th Cir. 1989). Uncontested allegations to which the other party had an opportunity to respond are taken as true. *Flora v. Home Fed'l Sav. & Loan Ass'n*, 685 F.2d 209, 211 (7th Cir.1982).

Generally, a court may only consider allegations made in the complaint and answer; extrinsic factual material may not be taken into account. *Powe v. Chicago*, 664 F.2d 639, 642 (7th Cir.1981). There is a narrow exception to this rule for materials properly attached to a complaint as exhibits. *Amfac Mortg. Corp. v. Arizona Mall of Tempe, Inc.*, 583 F.2d 426, 429

---

[2] With respect to the failure to state cognizable claims, Defendants Vieth and Goodson have moved to join the instant motion. (Doc. #76 and 83.) Plaintiff has filed a notice of non-opposition. (Doc. #92.) The court recommends that these motions to join should be granted.

& n.2 (9th Cir.1978). If matters outside the pleadings are presented to and not excluded by the court, the motion for judgment on the pleadings is converted into a Rule 56 summary judgment motion. *Hal Roach Studios, Inc.*, 896 F.2d at 1550.

A *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers. *Erickson*, 127 S.Ct. at 2200 (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). The court must construe the pleadings liberally and afford the plaintiff any benefit of the doubt. *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002). However, sweeping conclusory allegations will not suffice. *Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988). In giving liberal construction to a pro se civil rights complaint, the court is not to supply essential elements of the claim that were not initially pled. *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

## III. DISCUSSION

### A. STATUTE OF LIMITATIONS

Defendants Bayer and Angelone, both former directors of the Department of Corrections, move for dismissal of the claims pled against in Count I of the complaint.[3] Section 1983 actions are treated as state law personal injury actions for purposes of applying the statute of limitations. *Harding v. Balceran*, 889 F.2d 906, 907 (9th Cir. 1989). The Nevada statute of limitations for personal injury actions is two years. Nev. Rev. St. § 11.190(4)(e). Therefore, the statutory period for bringing a § 1983 action is two years as well. *See Wilson v. Garcia*, 471 U.S. 261, 280 (1985).

Defendants Angelone and Bayer argue that because they retired six years since Plaintiff learned of his sex offender classification (the predicate for Counts 1), they should be dismissed from the complaint. However, the statute of limitations is tolled until the plaintiff knows or

---

[3] Defendant Bayer has moved to join Defendant Angelone's motion for judgment on the pleadings on these grounds. (Doc. #43.) The complaint asserts one claim against Defendant Bayer in Count I. Plaintiff has opposed, challenging the merits of Defendant Bayer's claims against him but not the actual joinder. (Doc. #48.) The court recommends that the motion to join should be granted.

has reason to know of the injury that is the basis of the action. *Miller v. Davis*, 420 F.Supp.2d 1108, 1110 (9th Cir. 2006). Defendants do not challenge the assertion that Plaintiff did not learn of his sex offender classification until September 25, 2006. Neither do they provide any reasoning why Plaintiff should have been aware of the classification before this date. Therefore, the original complaint, filed April 21, 2008, was timely. Accordingly, the claims against these defendants in Count I is not barred by the statute of limitations.

Defendant Angelone also denies his personal participation with respect to Count II. This claim relates to Plaintiff's transfer to LCC in 1998. Defendant argues that this claim should be dismissed because he retired from NDOC in 1994. In response, Plaintiff argues that his classification as a sex offender could have occurred when he was first incarcerated in 1991. (Doc. #35 at 3.) While Plaintiff admits he is unsure exactly when he received the alleged classification, the procedural posture of this motion requires the court to assume that the relevant conduct occurred sometime after 1991 while Defendant Angelone was still an NDOC employee. Accordingly, the motion to dismiss Count II should be denied.

**B. RES JUDICATA**

Defendants move for judgment on Count VIII of the amended complaint, arguing that it is barred by res judicata. Res judicata, or claim preclusion, provides that a final judgment on the merits of an action precludes the parties from relitigating all issues that were or could have been raised in that action. *Rein v. Providian Financial Corp.*, 270 F.3d 895, 898-99 (9th Cir. 2001). Claim preclusion is appropriate where: (1) the parties are identical or in privity, (2) the judgment in the prior action was rendered by a court of competent jurisdiction, (3) there was a final judgment on the merits, and (4) the same claim or cause of action was involved in both suits. *Owens v. Kaiser Found. Health Plan, Inc.,* 244 F.3d 708, 713 (9th Cir.2001).

The first three factors in the *Owens* analysis are not at issue here. Instead, applying res judicata to this case turns on whether the cause of action is different from the prior suit. *Constantini v. Trans World Airlines*, 681 F.2d 1199, 1201 (9th Cir. 1982). To determine whether successive lawsuits involve a single cause of action, this court analyzes the claims

according to the following set of factors, with an emphasis on the last:

> (1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts.

*Id.* at 1201-02.

The current claim alleges that after Plaintiff was successful in a lawsuit[4] against Warden Schomig for retaliation in 2006, he was subsequently retaliated against by Defendant Whorton and other prison officials. Plaintiff argues that his situation within the prison remained unchanged because Defendants maintained the original retaliatory measures imposed by Warden Schomig. (Doc. #21 at 42-43.) Defendants contend that the lawsuits are the same because the current defendants are in privity with Schomig and because the same set of facts is implicated by both actions. (Doc. #30 at 7.)

The claims in the two lawsuits are distinguishable. While both allege retaliatory conduct by NDOC officials, they do not "arise out of the same transactional nucleus of facts" or rely on the same evidence. *See Constantini*, 681 F.2d at 1202. The previous complaint is based on the events occurring in May 2003, when Warden Schomig allegedly placed Plaintiff in administrative segregation at High Desert State Prison, seized his papers, changed his level status, and transferred him to another institution after discovering that Plaintiff had written a letter to the NDOC director. *See* Case #3:03-CV-577, Doc. #11 (amended complaint). The current complaint alleges that since the prior case was closed in September 2006, prison officials have *maintained* the effects of Warden Schomig's retaliatory conduct. Plaintiff specifically alleges that Defendants have denied Plaintiff's grievances related to a transfer out of LCC and have refused to have his administrative record expunged, which allegedly contains false accusations against him. (Doc. #21 at 18.)

/ / /

---

[4] *Lyons v. Schomig*, 3:03-CV-577-RAM (D. Nev.)

The distinction between prior and subsequent claims for a continuing course of conduct is well-recognized for res judicata. According to the Supreme Court,

> That both suits involved 'essentially the same course of wrongful conduct' is not decisive. Such a course of conduct ... may frequently give rise to more than a single cause of action.... While the [prior] judgment precludes recovery on claims arising prior to its entry, it cannot be given the effect of extinguishing claims which did not even then exist and which could not possibly have been sued upon in the previous case.

*Lawlor v. Nat'l Screen Serv. Corp.*, 349 U.S. 322, 327-28 (1955). *See also Storey v. Cello Holdings, LLC*, 347 F.3d 370, 383 (2d Cir. 2003) (res judicata does not bar claim in subsequent action that is premised on a continuance of the same course of conduct). Plaintiff is not attempting to relitigate the prior claims in his present lawsuit, which involve a different party, a different period of time, and at least somewhat different retaliatory conduct. Rather, he argues that prison officials are *continuing* to retaliate against him. It would not have been possible for Plaintiff to allege this claim in his previous lawsuit because he did not know whether the alleged retaliatory policies would continue. *Cf. Providian Fin. Corp.*, 252 F.3d at 1098 (res judicata bars relitigating issues that could have been raised in the previous action).

The remaining *Constantini* factors also suggest that the two lawsuits are distinct. Applying the first factor, a judgment in one action would not impair the rights established in the other. For example, even though Plaintiff argued that he was unlawfully transferred to LCC in the previous action, Defendants could still prevail by showing that he remains there for legitimate penological reasons. Additionally, under the third *Constantini* factor, the rights implicated by the two lawsuits are different. In *Schomig*, Plaintiff alleged that he was retaliated against for writing a letter to the NDOC director. (Doc. #30 at 7.) In this case, the protected activity allegedly being infringed upon is access to the courts. Therefore, the balance of factors in the res judicata analysis suggest that the preclusive effect of the *Schomig* judgment is not available in this case.

/ / /

/ / /

Though it is not one of the *Constantini* factors, Defendants emphasize that Plaintiff attempted to obtain much of the same injunctive relief he now requests at the conclusion of the prior lawsuit. (Doc. #30 at 6.) At the end of the *Schomig* litigation, Plaintiff made a motion for injunctive relief, seeking transfer out of LCC and the expungement of his records. (*Id.*, Ex. B, at 9 [Plaintiff's motion for injunctive relief].) However, the fact that Plaintiff now seeks similar injunctive relief should not change the conclusion of the res judicata analysis, as Plaintiff alleges a unique set of facts to support his claim. Accordingly, the court should find that Count VIII is not barred by res judicata.

**C. PRIOR SETTLEMENT AGREEMENT**

Defendants also contend that Count VII is barred by the res judicata effect of a settlement agreement and release executed by Plaintiff at the end of the *Schomig* litigation. A release of a civil rights claim under 42 U.S.C. § 1983 is controlled by federal common law. *Hisel v. Upchurch,* 797 F.Supp. 1509, 1518 (D.Ariz. 1992). Settlement agreements have the attributes of contracts, and they should be construed as such. *Miller v. Fair Child Indus., Inc.*, 797 F.2d 727, 733 (9th Cir. 1986). The language of the contract should be construed to carry out the intention of the parties in light of all the facts and surrounding circumstances. *U.S. v. Irvine*, 756 F.2d 708, 711 (9th Cir. 1985).

The release language relied upon by Defendants includes all claims arising from Plaintiff's prior lawsuit:

> Plaintiff agrees to release ... [Defendants] from any claims for relief, causes of action, claims or demands of whatsoever kind and character, whether or not asserted in any of the pleadings described in the Action **which have arisen, directly or indirectly, or may in the future arise, directly or indirectly from the fact situation described in the Action, regardless of whether such claims and demands are known or unknown at the present time**. It is the understanding of the Parties hereto that this release is to end forever the disputes which have arisen or might arise directly or indirectly as a result of the fact situation described in the Action, and to terminate forever any claims known or unknown which the Parties might have or contend to have arising in any manner out of said fact situation.

(Doc. #30, Ex. C, at 24, ¶ 11.) The release applies to any claims arising "directly or indirectly" from the "fact situation described in the Action." "Action" is a term defined as "*Philip J. Lyons*

*v. James Schomig, Sgt. D. Weolowski,* Case No. CV-N-03-577-HDM-(RAM)." (*Id.* at 23, ¶ 1.) According to its plain meaning, the settlement consists of all claims arising from the factual matters described in the pleadings. Therefore, the release is inapplicable for the same reason that the res judicata bar should fail. The claims in Count VII arise from conduct occurring *after* the prior lawsuit, not the retaliatory acts underlying that action. Admittedly, Plaintiff's claims indirectly involve the facts of the prior lawsuit, as Plaintiff alleges that the retaliatory conduct at issue here is a continuation of the policies adopted by Warden Schomig. However, the allegations in this case "arise" from different alleged actors, events, and motives that were not a necessary consequence of the conduct involved in the first lawsuit. A literal interpretation of the release language quoted above leads to an absurd result, as it encompasses all claims that "may in the future arise... indirectly from the fact situation" regardless of whether they are "known or unknown at the present time." Practically any claim against LCC "indirectly" arises from the *Schomig* facts since the case involved Plaintiff's transfer to the institution in the first instance. Accordingly, the court should find that the release language quoted above does not contemplate Count VII. *See Irvine*, 756 F.2d at 710 (contract should be interpreted to avoid absurd result). Defendants' motion for judgment on the pleadings based on the settlement agreement should be denied.

**D. ABSOLUTE IMMUNITY (Counts IV, V, VI, and XII)**

Defendants argue that they are absolutely immune from claims arising from the denial of Plaintiff's parole.[5] Parole board officials are absolutely immune from civil rights suits when they grant, deny, or revoke parole. *Swift v. California*, 384 F.3d 1184, 1189 (9th Cir. 2004); *Sellars v. Procunier*, 641 F.2d 1295, 1303 (9th Cir. 1981), *cert. denied*, 454 U.S. 1102 (1981). The Ninth Circuit based this prinicple on the "functional similarity" between the tasks performed by judges, who already enjoy absolute immunity, and parole board officials. *Id.* at

[5] Defendants Vieth and Goodson have moved to join the instant motion based on this defense. (Doc. #76 and 83.) Plaintiff has filed a notice of non-opposition. (Doc. #92.) The court recommends that these motions to join should be granted.

1303.

Plaintiff attempts to evade this holding by distinguishing the Nevada Parole Board from its California counterpart in *Sellars*, contending that his hearing lacked adequate procedural safeguards. This argument is unavailing for three reasons. First, while the court observed in dicta that the California Adult Authority provided some procedural protections to inmates applying for parole, this was not essential to the holding. The decision instead turned on application of the "functional similarity" test to determine whether parole boards operated in a quasi-judicial capacity, and hence required the immunity enjoyed by judicial officers. *Id.* at 1303. The presence of safeguards to prisoners' liberty interests was not a feature of this analysis. Second, the Ninth Circuit fully acknowledged that a prisoner would be without redress, even when officials acted maliciously in denying a prisoner parole. *Id.* at 1303. It held that this liberty interest must give way to the broader public interest in a well-functioning parole board. *Id.* Finally, like Sellars, Plaintiff has various procedural protections against arbitrary or capricious decisions by the Parole Board. For example, an inmate can file a writ of habeas corpus to challenge this type of hearing. *See, e.g., Wilkinson v. Dotson*, 544 U.S. 74, 81 (2005) (inmates may use habeas corpus remedies to seek injunction compelling speedier release). Additionally, after parole is denied, an inmate is guaranteed the right to routine rehearings so the Board can reconsider its decision. Nev. Rev. St. § 213.142. The Board cannot deny parole unless the prisoner has been given notice and an opportunity to attend the hearing. *Id.* at § 213.130 ¶ 9. Finally, if parole is denied, a prisoner is entitled to specific recommendations from the Board to improve the possibility of a future release decision. *Id.* at ¶ 11. These provisions protect an inmate from an undue deprivation of his liberty. Therefore, Nevada Parole Board members should receive absolute immunity from the claims pled against them in this action.

Plaintiff also argues that he is not challenging the Board officials' decision to grant, deny, or revoke parole per se, but rather the policies, practices, and customs used at his hearing. (Doc. #35 at 13.) He further argues that the conduct alleged in the complaint was not quasi-

judicial so that absolute immunity may apply. *Id.* It would be impossible, however, to avoid the chilling effect of legal liability if officials were immune from the outcomes of their decisions, but not from the procedures they utilized. While the Ninth Circuit has recognized limits to the scope of immunity for parole officials, the conduct at issue in this case is not sufficiently removed from the quasi-judicial process that requires absolute immunity. *See Swift*, 384 F.3d at 1189 (recognizing qualified rather than absolute immunity for parole officials with supervisory but not adjudicatory responsibilities). Plaintiff's argument that the officials were not functioning as the Board but rather as an advisory panel should fail for the same reason. The panel has direct input into whether parole is granted, and there is no other hearing during which the Board considers the inmate's arguments. Even though the Parole Board delegated its responsibilities to a three-person panel of its members, that does not lead to the conclusion that the officials in this case were acting in anything but a quasi-judicial manner.

Plaintiff also contends that the Board officials are not entitled to immunity because they were acting in a policymaking rather than judicial capacity. Plaintiff does not allege any facts showing that the defendants actually adopted a policy, custom, or practice rather than a routine decision to deny parole. Characterizing the functions exercised by the defendants as "policymaking" does not change the need for the decisionmaking process to remain unencumbered by legal liability.

Finally, Plaintiff argues that as of the date of his hearing, there was no state law that gave the Board quasi-judicial status or that exempt it from the requirements of Nevada's Open Meeting Law. Even though the Nevada legislature and Supreme Court had not yet recognized parole board hearings as quasi-judicial, that does not change the conclusion of *Sellars*, which was decided as a matter of federal law. Moreover, in *Witherow v. State Board of Parole Commissioners*, the Nevada Supreme Court subsequently held that hearings conducted by the Board were exempt from Open Meeting Law because they were quasi-judicial proceedings. 167 P.3d 408, 411 (2007). Though the parole hearing in this case occurred before passage of the amendment, the same was the true for the hearing at issue in *Witherow*. The court held that

*prior* parole board hearings were exempt from the Open Meeting Law as well.[6] Therefore, there is no basis for arguing that Plaintiff's parole board hearing lacked a quasi-judicial character or that absolute immunity should not apply.

Judgment should be entered dismissing the claims against the Parole Board members for money damages as alleged in Counts IV, V, VI, and XII. Absolute immunity extends to Plaintiff's claim for injunctive relief as well. Section 1983 provides that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." Federal Courts Improvement Act of 1996, § 309(c), Pub. L. No. 104-317, 110 Stat. 3847, 3853 (1996) (amending 42 U.S.C. § 1983). No such declaratory relief is alleged. In light of their functional similarities to judicial officers, the Parole Board members should receive this immunity as well. *See Montero v. Travis*, 171 F.3d 757, 761 (2d Cir. 1999). Therefore, the claims for injunctive relief against the Board members should also be dismissed. Plaintiff is still entitled to pursue his claims for declaratory relief. *See Corliss v. O'Brien*, 2006 WL 2686644, *3 (3rd Cir. Sep. 20, 2006) (the 1996 amendment does not alter case law regarding the availability of declaratory relief against judicial officers) (citing *Brandon E. ex rel. Listenbee v. Reynolds*, 201 F.3d 194, 197-98 (3d Cir.2000)); *Haas v. Wisconsin*, 109 Fed.Appx. 107, 114, n. 8, 2004 WL 1799360, *6 (7th Cir.2004) (§ 1983 allows claims for declaratory relief); *Bolin v. Story*, 225 F.3d 1234, 1242 (11th Cir. 2000) (the 1996 amendment limits the relief available to declaratory relief).

/ / /

/ / /

---

[6] The Legislature amended Nevada Revised Statutes § 213.130 to provide that parole release hearings were "quasi-judicial" and that "[n]o rights other than those conferred pursuant to this section or pursuant to specific statute concerning meetings to consider prisoners for parole are available to any person with respect to such meetings." The Nevada Supreme Court considered this provision as evidence that the state legislature intended to treat all parole hearings as quasi-judicial proceedings that are exempt from the Open Meeting Law, even those hearings that occurred before passage of the amendment. *Witherow v. Bd. of Parole Commrs.*, 167 P.3d 408, 410-11 (2007).

**E. GEOGRAPHIC DISCRIMINATION (Count VI)**

Count VI of the complaint alleges that Plaintiff was denied his Fourteenth Amendment right to equal protection because he received a more stringent parole hearing as a result of his imprisonment in a northern region of the state. (Doc. #21 at 37.) Defendants argue that this count should be dismissed because "there is no recognized claim for relief for geographical discrimination between two panels of the same interstate agency regarding a parole application." (Doc. #30 at 10.) The sui generis nature of Plaintiff's claim does not prove that he has failed to state a cognizable claim or that Defendants are entitled to judgment as a matter of law. Moreover, inmates have successfully challenged the imposition of a stricter set of parole guidelines based on their geographic location within the prison system. *See Walker v. Luther*, 644 F.Supp. 76 (D.Conn. 1986). Defendants fail to allege anything specific that would preclude Plaintiff from bringing his claim. Defendants' motion for judgment should be denied.

**F. DUE PROCESS (Counts IV, V, VII, and XII)**

Plaintiff alleges due process deprivations arising from the procedures used at his parole hearing. In certain cases, a parole statute can give rise to a liberty interest protected by the Due Process Clause of the Fourteenth Amendment. *See Greenholtz v. Inmates of the Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). To confer such an interest, the statute should contain a mandatory predicate such as "shall" or "must" that indicates an entitlement to parole. Lacking this language, the statute does not create a constitutionally protected liberty interest. *Greenholtz*, 442 U.S. at 7; *Baumann v. Arizona Dep't of Corr.*, 754 F.2d 841, 844 (9th Cir. 1985).

Nevada's parole statute does not contain mandatory language. According to Nevada Revised Statutes § 213.1099, the Board "may" release a prisoner parole after considering various enumerated factors. *See also Cooper v. Sumner*, 672 F.Supp. 1361, 1367 (D. Nev. 1987). Therefore, no protectable liberty interest arises for a Nevada inmate to be granted parole. *Cooper*, 672 F.Supp. at 1367; *Butler v. Wolff*, 28 F.3d 105 (9th Cir. 1994), at *1 (unpublished disposition). As a result, Plaintiff cannot state a claim based on the fairness of

the procedures used at his parole proceeding. *Cooper*, 672 F.Supp. at 1367. The motion for judgment dismissing the due process claims in Counts IV, V, VI, and XII should be granted.

**G. EX POST FACTO CLAUSE (COUNTS V AND VII)**

Counts V and VII of the complaint allege that the application of stricter parole guidelines adopted after Plaintiff's sentencing violated the Ex Post Facto Clause of the Constitution. (Doc. #21 at 36, 40). An ex post facto law "changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed." *Wallace v. Christensen*, 802 F.2d 1539, 1553 (9th Cir. 1986) (quoting *Calder v. Bull*, 3 U.S. 386, 390 (3 Dall. 1798)). It is a well-settled proposition in this circuit, however, that the federal parole guidelines are not laws for purposes of the Ex Post Facto Clause. *Wallace*, 802 F.2d at 1553; *Smith v. United States Parole Comm'n*, 875 F.2d 1361, 1367-68 (1989) (application of revised federal parole guideline did not violate ex post facto because it was not a law). Not all parole guidelines are exempt from the Ex Post Fact Clause. Where *state* parole regulations have the force and effect of law, set forth specific requirements before discretion may be exercised by the parole authority, and directly affect the sentence served by the inmate, the Ex Post Facto Clause applies. *Flemming v. Oregon Bd. of Parole*, 998 F.2d 721, 727 (9th Cir. 1993).

The guidelines in this case do not fall within the *Flemming* category of parole regulations subject to ex post facto scrutiny. First, Nevada's parole guidelines do not have the force and effect of law. According to the Nevada Administrative Code § 213.560(1), "the standards ... may be considered by the Board in determining whether to grant, deny, continue or revoke parole, but nothing contained in those sections shall be construed to restrict the authority of the Board", even where application of the standards would lead to a different result. Nev. Admin. Code § 213.560(1) (2008). Additionally, the Board may deviate from the standards based upon any circumstances it deems appropriate. *Id.* at § 213.560(2). Therefore, the parole guidelines challenged by Plaintiff operate not as law, but rather as a procedural guidepost. *Smith*, 875 F.2d at 1367 ("the operative factor in assessing whether a directive constitutes a 'law' for ex post facto purposes is the discretion that the Parole Commission

retains to modify that directive or to ignore it altogether"). Second, the guidelines do not establish any threshold requirements before the Board may grant or deny parole. Third, any connection between an increase in the recommended sentence and plaintiff's parole denial is speculative at best, as Plaintiff offers no evidence of the Board's reliance on these guidelines in making its decision.

Plaintiff argues that the guidelines are "laws" to the extent that the legislature exerts significant control over them. However, the statutory requirements for the guidelines are generalized in nature, specifying certain characteristics but no actual content for the regulations. *See* Nev. Rev. St. § 213.10885 (requiring that standards should be based on objective criteria and reflect the probability of recidivism). This direction does not convert the parole guidelines into legislative enactments reviewable under the Ex Post Facto Clause. Judgment should be entered for Defendants on the claims arising from this provision in Counts V and VII.

### H. DOUBLE JEOPARDY CLAUSE (COUNTS V AND VII)

Plaintiff alleges that by considering his dismissed criminal charge, the Parole Board violated his rights under the Double Jeopardy Clause of the Fifth Amendment. The Double Jeopardy Clause provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. Amend. V. "This protection applies both to successive punishments and to successive prosecutions for the same offense." *United States v. Soto-Olivas*, 44 F.3d 788, 789 (9th Cir.1995) (quoting *United States v. Dixon*, 509 U.S. 688, 694 (1993)).

In this case, the parole guidelines allow the Board to consider a wide variety of factors in determining the probability of recidivism, including a prisoner's dismissed criminal charges. *See* Nev. Admin. Code § 213.520(2). Contrary to Plaintiff's allegations, a denial of parole is not punishment for double jeopardy purposes. *See Alessi v. Quinlan*, 711 F.2d 497, 501 (2d Cir.1983) (denial of parole "is neither the imposition nor the increase of a sentence, and it is not punishment for purposes of the Double Jeopardy Clause"). Had Plaintiff been charged with

and acquitted of the dismissed offense *after* he was granted parole, it could still serve as a basis for revocation. *Standlee v. Rhay*, 557 F.2d 1303, 1306 (9th Cir. 1977). Because the Board's decision neither subjected Plaintiff to a second criminal prosecution nor to multiple punishments for the same offense, his double jeopardy claims should be dismissed. *See generally United States v. DiFrancesco*, 449 U.S. 117, 129 (1980). Judgment should be entered for Defendants on the claims arising from the Double Jeopardy Clause in Counts V and VII.

**I. EIGHTH AMENDMENT**

Plaintiff argues that the cumulative effect of Defendants' conduct violated his Eighth Amendment right to be free from cruel and unusual punishment. (Doc. #35 at 31.) Assuming that Plaintiff's allegations could be aggregated in this way, an inmate has no constitutional right to be conditionally released before the expiration of a valid sentence. *Greenholtz*, 442 U.S. at 7. Even the denial of parole on a life sentence is constitutionally valid. *U.S. v. Valenzuela*, 646 F.2d 352, 354 (9th Cir. 1980). In this case, where the alleged conduct only resulted in a longer interval before the inmate could be considered for parole, there can be no finding of cruel and unusual punishment. Judgment should be entered for Defendants dismissing the Eighth Amendment claims in Counts V, VII, and XII.

## IV. RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that the District Judge enter an Order **GRANTING IN PART** and **DENYING IN PART** Defendants' Motion for Judgment on the Pleadings (Doc. #60), as follows:

- The motions to join by Defendants Bayer, Vieth, and Goodson (Doc. #45, 76 and 83) should be **GRANTED**.
- Judgment on Counts I and II based on the statute of limitations should be **DENIED**.
- Judgment on Counts IV, V, and VI for Defendants Bisbee, Goodson, Vieth, and Salling dismissing the claims for money damages and injunctive relief should be **GRANTED**.
- Judgment on the claim based on the Fourteenth Amendment Equal Protection Clause in Count VI should be **DENIED**.
- Judgment on Counts IV, V, and VII dismissing the claims based on the Fourteenth Amendment Due Process Clause of the U.S. Constitution should be **GRANTED**.

- Judgment on Counts V and VII dismissing the claims based on the Ex Post Facto and Double Jeopardy Clauses of the U.S. Constitution should be **GRANTED**.
- Judgment should be entered dismissing the Eighth Amendment claims in Counts V and VII should be **GRANTED**.
- Judgment on Count XII dismissing the claim in its entirety should be **GRANTED**.

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule IB 3-2 of the Local Rules of Practice, specific written objections to this Report and Recommendation within ten (10) days of receipt. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1), Fed. R. Civ. P., should not be filed until entry of the District Court's judgment.

DATED: February 10, 2009.

UNITED STATES MAGISTRATE JUDGE